IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 15-cv-02676-RBJ

JAMES JARRELL and DIANE JARRELL,

      Plaintiffs,

v.

VIKING INSURANCE COMPANY OF WISCONSIN, a foreign entity doing business in the
State of Colorado, a Division of Sentry Insurance a Mutual Company; and
FEDERATED MUTUAL INSURANCE COMPANY, a Minnesota Insurance Company doing
business in the State of Colorado,

      Defendants.

---

## ORDER

---

This matter is before the Court on defendant Federated Mutual Insurance Company's

("Federated") motion for summary judgment.  ECF No. 45.  For the reasons below, the Court

GRANTS that motion.[1]

## I. FACTS

The facts of this case are largely undisputed.  On December 9, 2013 plaintiffs James and

Diane Jarrell were involved in a car accident with Mr. Brian Ness.  Amended Complaint, ECF

No. 42, at ¶¶7, 15–16.  At the time of the accident, plaintiffs were driving a vehicle owned by

Grand Auto, Inc. ("Grand Auto")—a car dealership that provided Mr. and Mrs. Jarrell with a

---

[1] Viking Insurance Company of Wisconsin ("Viking"), the other defendant in this action, does not join
Federated's motion.  Instead, Viking and plaintiffs have agreed to stay plaintiffs' claims against Viking
pending the Colorado Supreme Court's resolution of the appeal filed in *Johnson v. State Farm Mutual
Automobile Insurance Company, Inc.*, No. 13CA0752, 2014 WL 5033217, at *1 (Colo. App. Oct. 9,
2014).  ECF No. 44 at ¶9.

"loaner" car while it serviced plaintiffs' vehicle in its garage. *Id.* at ¶7; *see* Dep. of Nicholas Kern, ECF No. 47-1, at 14:16–23. Defendant Federated issued Grand Auto the automobile insurance policy covering these loaner cars. *See* Decl. of Cynthia Carlheim, ECF No. 45-1, at ¶2.

Prior to issuing Grand Auto this "garage operations" automobile insurance policy, Federated gave the company the option to purchase coverage for damages caused by uninsured/underinsured motorists ("UM/UIM" coverage). *See id.* On February 13, 2013 Grand Auto elected to obtain $500,000.00 of coverage for "directors, officers, partners or owners of Grand Auto" and their family members. *Id.* at ¶3; *see also id.* at 4 (UM/UIM coverage election form). For "any other person who qualifies as an insured" under the policy, Grand Auto explicitly rejected UM/UIM coverage. *Id.*

After "maxing out" Mr. Ness' automobile insurance policy for damages they allegedly suffered from the accident, plaintiffs each sought UM/UIM benefits under Grand Auto's policy with Federated. *See* Mr. Jarrell's Notice of Claim, ECF No. 42-3, at 1; Mrs. Jarrell's Notice of Claim, ECF No. 42-4, at 1. Federated rejected their claims. *See* ECF No. 42 at ¶45.

In this action, plaintiffs again seek those benefits. They admit that they were not then and are not now "directors, officers, partners or owners" of Grand Auto or family members of those persons. ECF No. 47 at 13. Nevertheless, they argue that Grand Auto's partial waiver of these benefits for all other insureds is void as against public policy, and that Federated's subsequent refusal to provide them with UM/UIM benefits is unlawful. *Id*. at 12–16.[2] Alternatively, they

---

[2] Although Federated denied plaintiffs' claims for UM/UIM benefits, it appears to agree that plaintiffs were covered under the general liability portion of Grand Auto's policy. *See* Dep. of Glenn Potter, ECF No. 47-5, at 27:1–5. Plaintiffs thus received "med pay" under that policy after the accident, although Federated denied them UM/UIM benefits. *See id.* at 26:16–20.

contend that Grand Auto's waiver of these benefits was ineffective, and that plaintiffs are subsequently entitled to UM/UIM benefits. *Id.* at 16–18.

Procedural History

Plaintiffs filed suit against Federated in Colorado state court on November 18, 2015. ECF No. 4.  In their amended complaint, which plaintiffs filed after defendants removed the case to this Court, see ECF Nos. 1, 4, 42, plaintiffs assert five claims for relief against Federated.[3] Those claims include: two claims for declaratory relief that argue that Federated's rejection of UM/UIM benefits was improper and invalid (Counts III and IV), a claim to recover those UM/UIM benefits (Count V), and two claims for loss of consortium by each plaintiff (Counts VI and VII).  ECF No. 42 at ¶¶42–80.

In its answer to plaintiffs' amended complaint, Federated asserts two counterclaims: a claim for declaratory relief asserting that plaintiffs were not covered under the UM/UIM provision of Grand Auto's policy, as well as an alternative claim that, should this Court find that Grand Auto's partial waiver was void or ineffective, that plaintiffs are only entitled to the minimum amount of UM/UIM coverage Federated is required to offer under Colorado law ($25,000.00 per person/$50,000.00 per accident).  ECF No. 5 at ¶¶80–86.  After filing its answer, Federated filed a motion for summary judgment on February 17, 2017.  ECF No. 45. That motion has been fully briefed and is ripe for review.  *See* ECF Nos. 45, 47, 50.

## II. STANDARD OF REVIEW

Under Rule 56, the Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the burden to show that there is an absence of evidence to support

---

[3] As mentioned above, plaintiffs have also filed claims against Viking (Counts I and II), which are not addressed in this Order.

the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id*. at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The Court will examine the factual record and make reasonable inferences in the light most favorable to the party opposing summary judgment. *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

### III. ANALYSIS

Federated argues that Grand Auto's waiver of UM/UIM benefits for individuals like Mr. and Mrs. Jarrell who were not "directors, officers, partners or owners" of Grand Auto or their family members, see ECF No. 15 at ¶6, was clear and unequivocal, ECF No. 45 at 7–9. They go on to contend that there is no "public policy" rationale preventing Grand Auto from doing exactly that—electing to obtain UM/UIM coverage for certain individuals while declining to pay to obtain coverage for others. *Id.* at 12–18. Therefore, they argue, because Grand Auto's waiver of UM/UIM coverage for individuals like plaintiffs was valid, plaintiffs have no claim for UM/UIM benefits under Grand Auto's policy and their claims against Federated must be dismissed. *See id.* I agree.

Colorado law is clear that while Grand Auto is not required to carry UM/UIM insurance, Federated must *offer* UM/UIM coverage to Grand Auto for *all* individuals "insured" under the general liability portions of its automobile insurance policy. *See Aetna Casualty & Surety Co. v. McMichael*, 906 P.2d 92, 94 (Colo. 1995); *Bernal v. Lumbermens Mut. Cas. Co.*, 97 P.3d 197,

202 (Colo. App. 2003); C.R.S. § 10–4–609(1).  However, after Federated made such an offer,

Grand Auto, as the "named insured" on the policy, could either elect to obtain such coverage or

to decline this coverage in writing.  *See* C.R.S. § 10–4–609(1) (explaining that Colorado law

requires automobile liability policies to provide coverage for protection against uninsured motor

vehicles "except that the named insured may reject such coverage in writing").

Given a policyholder's right to decline coverage, Colorado law allows automobile

liability policyholders to elect to obtain UM/UIM coverage for *some* "insureds" but not others.

*See Bernal*, 97 P.3d at 200 ("We first consider whether UM/UIM coverage provided at the

specific request of a policyholder, but narrower in scope than general liability coverage,

impermissibly dilutes, conditions, or limits statutorily mandated coverage under § 10–4–609.

We conclude it does not."); *id.* at 202 ("[W]e conclude that § 10–4–609(1) does not imply a

restriction on a policyholder's ability to contract for UM/UIM coverage narrower in scope than

general liability coverage in light of Colorado's 'strong policy of freedom of contract.'")

(emphasis added and citations omitted); *c.f. Am. Nat'l Gen. Ins. Co. v. Rivera*, 217 P.3d 1257,

1262 (Colo. App. 2007) (interpreting Colorado's statute on collision coverage in the same way);

*but see DeHerrera v. Sentry Ins. Co*., 30 P.3d 167, 173 (Colo. 2001) (finding a policy that

provided UM/UIM benefits only for certain vehicles under the policy invalid because the court

found that § 10–4–609(1) is not a *vehicle*-specific law, but rather a statute that deals in terms

coverage for *individuals*).

Here, Grand Auto did just that.  *See, e.g.*, ECF No. 45-1 at 4.  Admitting that is what

Grand Auto tried to do, plaintiffs nevertheless argue that Grand Auto's partial waiver of

UM/UIM coverage is against public policy.  *See* ECF No. 47 at 15; *see also Farmers Ins. Exch.*

*v. Anderson*, 260 P.3d 68, 75 (Colo. App. 2010) ("Thus, even if a policy provision is

unambiguous and negates coverage by its clear terms, it may nevertheless be rendered void and unenforceable if it violates public policy by attempting to dilute, condition, or limit coverage mandated by the uninsured motorist statute."). Predominately relying on the Colorado Supreme Court's decision in *McMichael*, they argue that insurance companies in Colorado must provide UM/UIM coverage for *all* insured individuals under a policy's general liability provisions when a policyholder elects to choose coverage for only *some* of those individuals. *See* ECF No. 47 at 15–16. Plaintiffs misinterpret *McMichael*'s holding.

As the Colorado Court of Appeals in *Bernal* explained, the Colorado Supreme Court held in *McMichael* that C.R.S. § 10–4–609(1) requires insurance companies to *offer* this broad coverage. *Bernal*, 97 P.3d at 202 ("The [*McMichael* court] then held that § 10–4–609(1) required insurers *to offer* UM/UIM coverage to a class of individuals as broad as the class covered under the liability provisions of an automobile insurance policy . . . [it] did not consider any limitation on an insurer's providing UM/UIM coverage for a more limited class in response to a policyholder's counteroffer.") (emphasis in original and internal quotation marks omitted). C.R.S. § 10–4–609(1) does not therefore restrict policyholders from electing to obtain UM/UIM coverage for only some insured individuals but not others. *See id.*

In other words, § 10–4–609(1) does not mandate an "all-or-nothing" approach to obtaining or rejecting UM/UIM coverage. *See id.* ("[P]laintiffs argue that *McMichael* requires an all-or-nothing interpretation. We are not persuaded."). And for good reason—such an approach, because it could significantly increase the cost of obtaining UM/UIM coverage, cold frustrate the Colorado legislature's purpose in enacting that law, which was to encourage, but not to mandate, obtaining this additional coverage. *See, e.g., Caldwell v. GEICO Gen. Ins. Co.*, No. 09-CV-01015-MJW-MEH, 2010 WL 865773, at *11 (D. Colo. Mar. 8, 2010) ("The purpose of

6

[§ 10–4–609(1)] is to ensure the widespread availability of UM/UIM coverage."); *see also Stoms*, 125 A.3d 1102, 1107 & n.19 (Del. 2015) (recognizing that an all-or-nothing approach "would dissuade employers from buying anything above the statutory minimum" of zero coverage in Delaware, which is the same in Colorado, and pointing out that Federated's underwriter testified that "obtaining the same level of uninsured motorists coverage for all drivers [under the policy in dispute] would have increased [Federated's] premiums from $816 to $12,759 annually" in that case). Public policy therefore not only permits but arguably *favors* what Grand Auto did—obtaining some UM/UIM coverage when the law does not require it to obtain any.

I therefore find plaintiffs' "public policy" argument for voiding the UM/UIM waiver within Federated's policy unavailing. Similarly, I find their other argument—i.e., that Grand Auto's rejection of this coverage was somehow ineffective or untimely, or that the policy itself is "ambiguous"—unpersuasive as well. *See* ECF No. 47 at 16–17. As defendants correctly point out, the "CA-F-93" document plaintiffs submit in an attempt to create a fact question over whether Grand Auto's waiver of UM/UIM coverage was effective at the time of the accident is dated *before* that accident even occurred. *See* ECF No. 47-16. In any event, that document also disclaims coverage for plaintiffs and, importantly, was never even part of the certified, effective copy of Grand Auto's policy with Federated that indisputably waived such coverage. *See* Decl. of Amber Faddis, ECF No. 50-2 at ¶7 (explaining that what plaintiffs rely on was a "sample copy" given to plaintiffs' counsel when Federated informed plaintiffs that Grand Auto's policy did not provide them with UM/UIM coverage); ECF No. 45-1; ECF No. 47-14. Therefore, at all relevant times, I find that Grand Auto validly disclaimed UM/UIM coverage for individuals like plaintiffs.

Lastly, I disagree with plaintiffs that Grand Auto's partial waiver was ineffective because Colorado law required Federated to obtain a new rejection of UM/UIM coverage from Grand Auto after it had already obtained one in February of 2013.  Simply put, the law does not require that of Federated.  *See* C.R.S. 10–4–609 (3) ("[A]fter selection of limits by the insured or the exercise of the option not to purchase the coverages described in this section, no insurer . . . shall be required to notify any policyholder in any renewal or replacement policy, as to the availability of such coverage or optional limits.").

## ORDER

Finding that no genuine issues of material fact exist and that Federated is entitled to a judgment as a matter of law, the Court GRANTS Federated's motion for summary judgment [ECF No. 45].  The Court therefore directs a judgment in Federated's favor on Counts III–VII of plaintiffs' amended complaint, dismissing those claims with prejudice, and directs a judgment in Federated's favor on the first counterclaim within its answer.  Reaching that disposition, I dismiss as moot the second counterclaim Federated has asserted against plaintiffs.  As the prevailing party, defendant is awarded its reasonable costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 28th day of March, 2017.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge